UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL A. GALJOUR | CIVIL ACTION |
| VERSUS | NO. 06-8150 |
| CLAUDE CUTITTO AND ALLSTATE INSURANCE COMPANY | SECTION "N" (1) |

### ORDER AND REASONS

Plaintiff, Michael A. Galjour ("Galjour"), moves this Court to remand this matter to the Civil District Court for the Parish of Orleans, State of Louisiana. The removing defendants, Allstate Insurance Company and Allstate Indemnity Company, in its separate capacity as the issuer of Plaintiff's privately issued homeowners insurance policy (collectively referred to as "Allstate"), oppose Galjour's motion. As stated herein, **IT IS ORDERED** that Plaintiff's Motion to Remand (Rec. Doc. No. 6) is **DENIED**.

### I. FACTS AND PROCEDURAL HISTORY

Galjour is the owner of certain property located at 2513 Myrtle Street, New Orleans, Louisiana, in the Parish of Orleans. On or after August 29, 2005, Galjour's property was severely damaged as a result of Hurricane Katrina. At the time, Galjour had a homeowners/fire/liability insurance policy from Allstate covering this property, with coverage of the dwelling in the amount

1

of $114,188 and coverage of contents in the amount of $79,932. Also, Galjour had flood insurance, providing dwelling coverage of $33,000 and contents coverage of $10,500, for which Allstate was the administrator.

Galjour and Allstate were unable to satisfactorily resolve claims made on these policies. Accordingly, on August 23, 2006, Galjour filed these proceedings in the Civil District Court for the Parish of Orleans, State of Louisiana, asserting claims against Allstate for sums due under the relevant insurance policies, as well as penalties and damages pursuant to La. R.S. 22:1220, and asserting a separate negligence claim against the insurance agent, Claude Cutitto ("Cutitto").

On October 13, 2006, Allstate removed this matter to the Eastern District of Louisiana. Allstate's grounds for removal are: (1) exclusive federal jurisdiction pursuant to 42 U.S.C. § 4072; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; (3) the so-called "federal officer statute", 44 C.F.R. Pt. 61, App. A(1), Art. IX, 28 U.S.C. § 1441, 28 U.S.C. § 1442(a)(1) and 1442; (4) original federal question jurisdiction pursuant to 28 U.S.C. § 1337; (5) diversity jurisdiction pursuant to 28 U.S.C. § 1332; and (6) supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

Galjour moves to remand this matter to state court.

## II. LAW AND ANALYSIS

### A. Diversity of Citizenship Jurisdiction and Fraudulent (Improper) Joinder

To exercise diversity jurisdiction, complete diversity of citizenship must exist between the plaintiff and all of the properly joined defendants, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332. Allstate contends that this Court has diversity jurisdiction over this suit because Galjour improperly or fraudulently joined Cutitto, an in-state defendant, to defeat

2

diversity jurisdiction.

A plaintiff may not join a non-diverse defendant in a suit to defeat diversity jurisdiction unless the plaintiff has a viable claim against that defendant. When determining whether the plaintiff has a viable claim, "the plaintiff's intent that the joinder" of a defendant "should defeat federal subject matter jurisdiction is immaterial to the propriety of the removal," as long as the claim against the party to be joined is "not merely colorable or made in bad faith." 14C C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723, at 629-30 (3d ed. 1998). "The burden of proving a fraudulent joinder is a heavy one" that is borne by the removing party. *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir. 1983).

To establish fraudulent joinder, the removing party must show either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *McKee v. Kan. City S. Ry. Co.,* 358 F.3d 329, 333 (5th Cir. 2004) (citation omitted). "[F]raudulent joinder must be proved 'with particularity and supported by clear and convincing evidence' by the removing party." *Doe v. Cutter Biological,* 774 F. Supp. 1001, 1003 (E.D. La. 1991) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723, at 343 (2 ed. 1985)). The Court, however, should not pre-try the case. *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990).

The Fifth Circuit has historically used different phrases in describing the standard for fraudulent joinder. Whether using the phrase "no possibility of recovery" or "no reasonable basis for the plaintiff to establish liability," the essential standard has been the same. *See Travis v. Irby,* 326 F.3d 644, 647 (5th Cir. 2003). In *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,*

the Fifth Circuit clarified the standard when it stated:

> [T]he court determines whether the [plaintiff] has any possibility of recovery against the party whose joinder is questioned. If there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This possibility, however, must be reasonable, not merely theoretical.

313 F.3d 305, 312 (5th Cir. 2002) (internal citation and quotations omitted).

A full-scale evidentiary hearing is inappropriate for determining fraudulent joinder because the validity of the plaintiff's "claim against the in-state defendant(s) should be capable of summary determination." *Gree\n,* 707 F.2d at 204. The scope of the inquiry for fraudulent joinder, however, goes beyond the pleadings to include summary judgment-type evidence. *Travis,* 326 F.3d at 648-49. Further, ambiguities, whether in the relevant state law or in fact, are to be interpreted in favor of the party who is accused of fraudulent joinder. *Id.* at 648.

Regarding the validity of Galjour's joinder of Cutitto as a defendant to this action, an agent for a known principal cannot be held personally liable with respect to the principal's contract, under Louisiana law, unless the agent personally binds himself, exceeds his authority, or misrepresents a position of the principal. *See* La. Civ. Code arts. 3016, 3019; *Leblanc v. Mid-Continent Life Ins.,* No. 93-2677, 1993 WL 432374, at *1 (E.D. La. Oct. 21, 1993). An insurance agent such as Cutitto also may be held liable, in tort, if he intentionally or negligently misrepresents facts that he knows or has reason to know to be false. *See, e.g., Ragas v. Tarleton,* No. 06-4137, 2006 WL 2925448, *3 (E.D. La. Oct. 10, 2006).

Further, an insurance agent owes a fiduciary duty to an insured to use reasonable diligence in procuring requested insurance coverage for the client's risks of which the agent is aware. *See, e.g., Offshore Prod. Contractors., Inc. v. Republic Underwirters Ins. Co.*, 910 F.2d 224, 229 (5th Cir.

4

1990).  This duty is breached and exposes the agent to personal liability when: (1) the agent agrees or undertakes to procure the requested insurance; (2) the agent fails to use reasonable diligence in attempting to place the insurance and fails to notify the client promptly that he has failed to place the insurance;  and (3) the agent's actions warrant the client's assumption that he was properly insured. Any additional duty owed by the agent beyond merely using reasonable diligence in procuring the insurance coverage requested will necessarily turn on the services the agent holds himself out as providing to his clients, the services sought by the client, the specific information supplied or requested by the client, and the agent's undertaking or representations in response thereto.

In ¶ XXII of his original Petition, Galjour states:

> "**At all times material to the allegations contained herein, the defendant, CUTITTO, was either employed by or was an agent of the defendant, ALLSTATE**.  As such, the defendant, ALLSTATE, is liable and responsible for the acts, errors and omissions of the defendant, CUTITTO, rendering the defendants liable jointly and *in solido*, for plaintiff's damages and losses." (emphasis added)

In ¶ XXIV of his Petition, Galjour further alleges as follows:

> Plaintiff avers that the defendant, CUTITTO, was negligent in the following non-exclusive particulars:
>
> (A) Failing to advise plaintiff of the gap;
>
> (B) Failing to close the gap;
>
> (C) Increasing homeowner/fire/liability limit without implementing corresponding increases in flood insurance limits and failing to warn plaintiff that it was not increasing flood limits;

5

    (D)    Failing to apprise the plaintiff of the existence of other insurance products, specifically excess flood insurance coverage, which would have allowed plaintiff to have properly insured his dwelling and content;

    (E)    Deviating from industry standards by failing to "match" plaintiff's flood content coverage to plaintiff's flood dwelling coverage;

    (F)    Failing to advise the plaintiff that homeowners/fire/liability insurance would not cover catastrophic levee failure or other acts of man which might result in damage to plaintiff's property;

    (G)    Failing to increase flood content limits to the available maximum when instructed to do so in the latter part of June 2005; and

    (H)    Such other acts of negligence and inaction as may be shown at the trial of this cause.[1]

Cutitto's alleged error or omission in these regards would have been committed while he "was either employed by or was an agent of the defendant, Allstate." Significantly, Galjour has not alleged that Cutitto personally bound himself on the Allstate insurance contract, exceeded the authority granted him by Allstate, or misrepresented Allstate's position with respect to the policy.

    Furthermore, Galjour does not allege that he informed Cutitto that he wanted "full" or maximum flood coverage for his home and/or its contents, that Cutitto undertook to advise him regarding the appropriate flood coverage amounts, that Galjour requested such advice, or that

---

[1] Unlike the allegations set forth in subsections (A-F) of ¶XXIV of the Petition, the allegation set forth in subsection (G) is not set forth or referenced in any way in Galjour's motion to remand. Accordingly, the Court assumes that it was mistakenly included in the unverified Petition and will not consider the allegation in ruling on Galjour's motion.

Galjour inquired with respect to the disparity between the flood and homeowner's insurance limits. Nor does he allege, for example, that Cutitto ever informed him that he had full "hurricane coverage."

While Galjour does allege, in ¶ XVIII of the Petition, that he "first discovered" the disparity between the coverage limits of the two policies after August 29, 2005, he does not allege that these amounts were not clearly set forth in the policies and/or their declarations pages, as they typically are, or that he never received the policies. Thus, Galjour already should have been aware of the disparity in the policies' limits if he in fact was not. Regarding excess flood insurance, that coverage would not be implicated here as Galjour did not have the maximum amount of flood insurance available through the National Flood Insurance Program; nor did the limits of his homeowners policy, by comparison, or the amount of his alleged actual flood damages, equal that amount.

Given the foregoing, the Court finds no reasonable basis to predict independent liability against Cutitto based on the allegations set forth in subsections (A-E) of ¶XXIV of the Petition. With respect to subsection (F), which alleges "[f]ailing to advise the plaintiff that homeowners/fire/liability insurance would not cover catastrophic levee failure or other acts of man which might result in damage to plaintiff's property," the Court *assumes* that this alleged lack of coverage would not be readily apparent to Galjour upon a simple review of his policy, and that Cutitto may have had a duty to discuss this point with Galjour. Even if that is so, Cutitto's affidavit alleges that Galjour initially procured his flood insurance policy in December 1992, and his

7

homeowners policy in July 2002.[2] Cutitto further states that he became Galjour's agent in July 2000. Given that all of these dates occurred well before three years prior to the date Galjour filed suit, August 23, 2006, and that no separate and distinct wrongful conduct is specifically alleged subsequent to the initial policy procurements, the Court finds that Galjour's claims are perempted by La. R.S. 9:5606.

For the foregoing reasons, the Court finds that there is no reasonable basis to predict independent recovery against Cutitto, the non-diverse defendant. Galjour's claims against Cutitto are thus disregarded when considering the existence of diversity jurisdiction. Accordingly, given the diversity of citizenship present between Galjour and Allstate, the Court finds it has jurisdiction over the action pursuant to 28 U.S.C. §1332. Although Galjour contends that the removal of the action was nevertheless procedurally defective because not all of the defendants timely consented, timely consent of an improperly joined defendant is unnecessary. *See Jurnigan v. Ashland Oil, Inc.,* 989 F.2d 812, 815 (5th Cir. 1993).

### B. Other Grounds for Removal

The Court need not discuss all of the jurisdictional grounds asserted by Allstate, as it finds that diversity of citizenship jurisdiction exists pursuant to 28 U.S.C. § 1332.

---

[2] *See* Affidavit of Claude Cutitto, ¶¶ 4, 7-10, Exh. A to Allstate's Opposition to Motion to Remand (Rec. Doc. No. 13).

8

### III. CONCLUSION

For the reasons stated herein, the Court finds that federal removal jurisdiction exists pursuant to 28 U.S.C § 1332, and Plaintiff's Motion to Remand is **DENIED**.

New Orleans, Louisiana, this  29th  day of June 2007.

_____
**KURT D. ENGELHARDT**
**United States District Judge**